UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CHHOM C.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>    Defendants. | Case No.  23-cv-04741-RMI<br><br>**ORDER REMANDING CASE**<br>Re: Dkt. Nos. 16, 19 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 14-24.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-5), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 6, 8), and the matter has been fully briefed (*see* dkts. 16, 19, 22). For the reasons stated below, this case is remanded for further proceedings.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in eleven attachments to Docket Entry #9. *See* (dkts. 9-1 through 9-11).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff – now 55 years old – has applied for Title II benefits with an alleged onset date of December 15, 2015, and a date last insured of June 30, 2018. *See* AR at 17. The ALJ in this case found that Plaintiff's only severe impairments were essential hypertension, type II diabetes mellitus, obesity, and coronary artery disease. *Id*. Plaintiff claims, *inter alia*, that the ALJ erred in failing to find Plaintiff's diagnosed and ongoing back conditions, his chronic pain syndrome, his depression, and his diabetic retinopathy severe at Step Two. *See* Pl.'s Br. (dkt. 16) at 14-19.

In early 2012, while moving a pallet of bottles with a pallet jack at work, Plaintiff experienced a loud popping sensation, followed by pain, in his lower back. AR at 2190. He was diagnosed with a herniated lumbar disc, lumbar radiculopathy, and pelvic subluxation – the upshot of which was that he would experience persistent lower back pain, particularly on his left side. *Id*. at 2189. The lower back pain ranged from moderate to severe; it was intermittent; and it was exacerbated by prolonged sitting (*i.e*., he needed to frequently change positions). *Id*. at 2190. His activities of daily living became "sedentary," such as watching TV and resting, and he gained weight quickly. *Id*. His treatment provider at the time noted constant paresthesias and pain

radiation from his lower back injury, which restricted the range of motion in his back and knee, caused abnormal deep tendon reflexes, resulted in tenderness and spasms of the spine and back muscles, and caused difficulty in heel/toe ambulation. *Id*. at 2191. His lower back was also observed to be hypersensitive to palpation. *Id*. Because of these injuries, Plaintiff's worker's compensation claim was approved in May of 2012. *Id*. at 216.

As part of the treatment for his lumbar discogenic pain, Sherman Tran, M.D., administered transforaminal epidural steroid injections to the L4 and L5 regions of Plaintiff's spine in August 2012. *Id*. at 2197. Nevertheless, in December 2012, Plaintiff still had persistent pain (of a level 8 out of 10) in the lower back area, which made sleeping difficult. *Id*. at 2201. Dr. Tran observed that Plaintiff's residual range of motion was only 25% of the normal range of motion for flexion, and only 50% for extension. *Id*. at 2202. Pushing, pulling, bending, and reaching over his shoulder, as well as cold air at night, all exacerbated the pain – and only lying down sideways or face-down would help to ease the pain. *Id*. at 2206, 2220. Dr. Tran diagnosed Plaintiff with disc protrusion from L3 to L5 with lumbar radiculopathy and directed him to stay in modified work status, lifting only up to 5 pounds. AR 2203, 2207.

In June 2013, after more than a year, Plaintiff was still suffering moderate to severe tenderness in his lumbar paraspinal region, and Dr. Tran found that Plaintiff's symptoms and responses were confirmed by his physical examination findings. *Id*. at 2212, 2213. Dr. Tran now observed only a 20% normal range of motion in flexion, and only 50% of the normal range of motion in extension in Plaintiff's back; additionally, an MRI showed disc protrusion from L3 to L5 in Plaintiff's lower spine. *Id*. at 2216, 2217. Dr. Tran concluded that Plaintiff had reached "maximal medical improvement"; that his disability status was "permanent and stationary"; and, that he could only perform modified work, lifting a maximum of 5 pounds. *Id*. at 2217. Dr. Tran recommended physical therapy, anti-inflammatory agents, epidural injections, and surgical discectomy and fusion, but noted that Plaintiff was "currently not a candidate for surgery" due to his diabetes and hypertension. *Id*. at 2218.

Between 2014 and 2016, Plaintiff received treatment at the Pacific Pain Institute and Integrated Pain Management with Toufan Razi, M.D. AR 337-461. Dr. Razi diagnosed Plaintiff

3

with thoracic/lumbosacral neuritis or radiculitis, sprains and strains of lumbar region, skin sensation disturbance, and sleep disturbance. *Id*. at 337. In February 2014, Plaintiff was still experiencing lower back pain, left lower extremity pain, and cramping and numbness, left hip pain (in the order of 8 on a scale of 1 to 10), along with fatigue, irritability, and restlessness. *Id*. at 338, 346, 352, 360, 369, 372, 375, 381. The continuing pain and cramping steadily interfered with Plaintiff's sleep, and the radiating pain was exacerbated by cold weather. *See id*. at 338, 346, 352, 360, 369, 372, 375, 381, 391, 404, 410, 414, 419, 423, 427, 433, 437, 441, 446, 450, 451. Plaintiff reported radiation of pain to his left side (thigh, leg, and foot), as well as his right side (hip, thigh, leg, ankle, and foot). *See id*. at 346, 390, 414, 419, 423, 427, 441, 446, 450, 451. Consistent with Dr. Tran's previous observations, during the period between 2014 and 2016, Dr. Razi also observed a restricted range of motion in Plaintiff's lumbar spine (30 degrees flexion, limited by pain, and 10-20 degrees extension, as limited by pain), with the straight leg test positive in both legs, and the lumbar facet loading test positive on the left side. *See id*. at 339, 347, 350, 353, 361, 370, 373, 376, 382, 391, 396, 405, 411, 415 (numbness and lower left extremity weakness), 420, 424, 428, 434, 438 (back pain, muscle pain, dizziness, numbness, tingling, dizziness, and left lower extremity weakness), 442, 447 (left sided antalgic and slowed gait), 452. Plaintiff also showed tenderness on the left side and reduced light touch sensation on the left side over the L5-S1 dermatomes. *Id*. at 339, 347, 350, 353, 361, 370, 373, 376, 382, 391, 411, 415, 420, 424, 428, 434, 438, 442, 447, 448, 452. Dr. Razi also diagnosed Plaintiff with radiculopathy and a sprain of the ligaments of his lumbar spine in December 2015. *Id*. at 448. Further, Plaintiff was also assessed as suffering from some degree of diabetic retinopathy; in this regard, Plaintiff was warned that the failure to optimize his blood sugar, cholesterol, and blood pressure may result in the loss of his vision. *Id*. at 2418, 2419. Dr. Razi also found that Plaintiff's physical condition (rooted in his spine issues) also met the criteria for a chronic pain syndrome diagnosis, given that he had suffered a loss of function for more than three months, was excessively dependent on healthcare providers, his spouse, and his family, and given also that his current physical capacity was "insufficient to pursue work, family, or recreational needs." *Id*. at 340. Plaintiff has also been diagnosed with depression (and his treatment providers have noted depressive symptoms) on

1   numerous occasions. *See id*. at 390, 450-51, 1078, 1082, 2648, 2661.

2   At the hearing before the ALJ in October of 2022, Plaintiff confirmed that the above-described pain has kept him from being able to work. *See id*. at 43-44. He testified that the spinal injections provided only temporary relief, but that lifting heavy objects, lifting his arm over his shoulders, walking too much, or sitting down in the same position, all exacerbate the pain associated with his spinal injury. *Id*. at 45-46. Plaintiff also reiterated at the hearing that only surgery could possibly ameliorate his condition – however, due to his hypertension, diabetes, and other health conditions, his doctors have warned him that surgery would be attended with heightened risks. *Id*. at 46-47. Once again, Plaintiff confirmed that – since the date of his initial injury (in 2012) until at least the date of the hearing (in 2022), the pain and limitations associated with standing, walking, and sitting are not only still present – they've worsened. *Id*. at 47 ("I still have the same pain, only it's worse, like, during the day, where I move . . . and then when you sit too long and then my lower back disc, it's squishing, so that's like [] more pain."). When asked by the ALJ what Plaintiff now does throughout the day – Plaintiff described a home-bound, sedentary existence as such: "I have, like, three pillow[s], and I have in my left, I have - - or my right. So, when I feel the pain, then instead of sit[ting] down straight, I just lean over that pillow to this side. And then - - then my problem starts in my leg, then I start to get up, like, walk around the house, [] you know, a little bit here and there, then come back, [and] sit down. Or I have to lie down, face down with the pillow in my stomach to release the pain from my back, because I cannot, like arch my back, I have to be straight." *Id*. at 48. As to the depression, Plaintiff also briefly testified as to the limitations he experiences as a result of his depression. *See id*. at 53, 56 (mentioning the effects of the depressive symptoms on his relationship with his wife). However, the ALJ did not sufficiently develop the record in this regard.

**THE ALJ DECISION**

The ALJ in this case engaged in the required five step sequential evaluation process. *See id*. at 15-24. At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through his date last insured of June 30, 2018, and that he had not performed substantial gainful activity since June 30, 2018 – his alleged onset date. *Id*. at 17. At step two, the

1  ALJ determined Plaintiff's severe impairments are essential hypertension, type II diabetes

2  mellitus, obesity, and coronary artery disease. *Id.* at 17. The ALJ found that Plaintiff's other

3  conditions "were either not of required duration to be considered a severe impairment,

4  asymptomatic and/or controlled with treatment, and/or did not significantly limit the claimant's

5  ability to perform basic work activities . . . to be considered severe impairments." *Id.*

6  At Step Three the ALJ found that no combination of Plaintiff's conditions met or equaled

7  any listed impairment. *Id.* at 19-20. In formulating Plaintiff's residual functioning capacity

8  ("RFC"), the ALJ determined that Plaintiff could "perform medium work . . . with additional

9  limitations [to the effect that] the claimant was able lift/carry 50 pounds occasionally and 25

10  pounds frequently, sit, stand, and/or walk six hours in a normal eight-hour workday with normal

11  breaks, frequently climb ramps/stairs, occasionally climb ladders, ropes, and scaffolds, and

12  frequently kneel, crouch and crawl [and] needed to avoid concentrated exposure to pulmonary

13  irritants such as fumes, odors, dusts, gases, and poor ventilation." *Id.* at 20-22.

14  At Step Four, the ALJ concluded that Plaintiff was incapable of performing his past

15  relevant work. *Id.* at 23. Lastly, at Step Five, based on the testimony of the vocational expert, the

16  ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists

17  in significant numbers in the national economy, such as a stores laborer, a dining room attendant,

18  and a kitchen helper. *Id.* at 23-24.

19  **DISCUSSION**

20  Plaintiff raises five claims in this court – including the claim that the ALJ erred by failing

21  to find Plaintiff's various ongoing back conditions, his chronic pain syndrome, his depression, and

22  his diabetic retinopathy to be severe impairments at Step Two. *See generally* Pl.s' Br. (dkt. 16) at

23  14-19. The court agrees and finds that the ALJ's failure in this regard: (1) was legal error based on

24  a misapprehension of the standards associated with Step Two determinations; (2) was rooted in the

25  failure to properly develop the record as to these conditions and their limitations during the

26  relevant disability period; and, (2) resulted in a RFC that is not based on substantial evidence –

27  necessitating a remand for further proceedings.

28  Step Two's evaluation is a *de minimus* test intended to weed out patently groundless

claims and the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de minimus* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (step two is a "*de minimis* threshold"). An impairment is non-severe at Step Two only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290. Given the above-recited description of Plaintiff's ongoing back conditions, his depression, and his diabetic neuropathy – the court concludes that the ALJ erred in finding these conditions to be subjected to weeding out at Step Two as patently groundless, or as the most minor of impairments. Instead, the court finds that these impairments warrant serious consideration in the development of a full and fair disability record, and in the ultimate formulation of Plaintiff's RFC. In fact, it appears to the court that the combination of the conditions described above may indeed be disabling – however – due to the ALJ's failure to properly develop the record in this regard, further proceedings are necessary.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ's duty to "conduct an appropriate inquiry" is triggered where evidence is ambiguous or – as is the case here – the record is inadequate to allow for proper evaluation of the evidence. *Id.*; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999)).

The above-recited evidence related to Plaintiff's conditions that were erroneously found to be non-severe at Step Two undoubtedly paints a serious picture – indeed, Plaintiff's condition can be fairly described as grave. However, the record is undeveloped as to *the limitations* attending these conditions *during the relevant disability period*. Accordingly, the court finds that the record

7

1  was not adequately developed to allow for a proper evaluation of the evidence recited above. More
2  specifically, the record in this case contains no function reports from Plaintiff or his friends or
3  relatives – such as might detail what physical activities Plaintiff could (or could not) perform
4  during the relevant disability period. Second, the ALJ did not venture to subpoena or communicate
5  with any of Plaintiff's treatment providers (as set forth in *Tonapetyan*, 242 F.3d at 1150) to secure
6  their opinions as to Plaintiff's functional limitations during the relevant disability period. Third,
7  the ALJ did not develop Plaintiff's testimony in this regard at the hearing. On remand, the ALJ is
8  **ORDERED** as follows: (1) to invite Plaintiff and his close relatives or friends to submit detailed
9  function reports addressed to the limitations he may have experienced during the relevant
10 disability period; (2) to conduct a new hearing such as to fully and fairly develop Plaintiff's
11 testimony about the limitations he experienced as a result of the combination of *all* of his
12 impairments (including the above-described conditions) during the relevant disability period; and,
13 (3) to subpoena, or submit questions to Plaintiff's treating physicians regarding their opinions
14 about the limitations Plaintiff experienced during the relevant disability period as a result of his
15 impairments.

16      Because the additional record development set forth above is necessary, the court declines
17 to address Plaintiff's remaining arguments. Those issues, if necessary, may be addressed on
18 remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to
19 the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.");
20 *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The]
21 Court need not address the other claims plaintiff raises, none of which would provide plaintiff
22 with any further relief than granted, and all of which can be addressed on remand."). On remand,
23 the Commissioner is instructed to consider the other issues raised in Plaintiff's briefing and
24 modify any ensuing ALJ opinion as appropriate in order to reflect that the other issues raised by
25 Plaintiff in this court have been considered and addressed. *Steven M. v. Saul*, 2021 U.S. Dist.
26 LEXIS 52225, *17 (N.D. Cal. Mar. 19, 2021).
27 //
28 //

**CONCLUSION**

Accordingly, this case is **REMANDED** for further proceedings consistent with the holdings and instructions provided herein. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 23, 2024

ROBERT M. ILLMAN
United States Magistrate Judge